DEES v. NATIONAL CASUALTY CO.—66 S. W. (2d) 603.

Western Section.   July 19, 1933.

Petition for Certiorari denied by Supreme Court, December 9, 1933.

John R. Walker, Jr., of Memphis, for appellant.
A. B. Knipmeyer, of Memphis, for appellee.

ANDERSON, J.   This well-briefed and well-presented cause is before this court on an appeal by the complainant, Carrie P. Dees, from a decree of the chancery court of Shelby county, dismissing the bill filed by him against the defendant, National Casualty Company, wherein he sought to recover disability benefits under a group policy of health and accident insurance issued by the defendant, insuring certain members of the Memphis Post Office Clerks Health & Accident Association, of which association he was a member. Each member of the association insured was issued a certificate by the defendant company, certifying that he was insured under a group policy, subject to all of the conditions contained in said group policy. After referring to and describing the group policy by appropriate reference, the certificate issued to the complainant certified that as a member of the association referred to, the complainant was "insured thereunder for a term of one month from 12 o'clock noon of the 15th day of June, 1931, Standard Time, of Memphis, Tennessee, subject to the limitations and conditions contained in said policy, against illness which begins after this insurance becomes effective and against bodily injuries effected while the said member is insured under said policy through accidental means, directly and independently of all other causes, sustained under the conditions as stated in the policy." There followed a schedule of indemnities for specific losses providing that the principal sum of $1,000 be paid for loss of life or of both hands or of both feet, sight of both eyes, or one hand and one foot, and that one-half of the principal sum would be paid either for the loss of either hand or either foot or the sight of either eye.

Under the schedule of indemnities for specific losses, there was a provision providing for the payment "for total loss of time caused by accident or illness as set forth in said policy, $100 per month for such period of disability, but not exceeding twelve months." The group policy referred to, insured the members of said association covered thereby against:

"Accident Indemnity for Total Disability. At the rate of monthly indemnity provided by each insured's certificate under this policy for total loss of time not exceeding twelve consecutive months, resulting solely from bodily injuries effected directly and independently of all other causes, by the happening of an External Violent and Accidental event (suicide, sane or insane excepted), and which shall immediately continuously and wholly from date of accident disable and prevent the insured from performing any and every duty pertaining to his business or occupation; and shall require the

regular personal attendance of a legally qualified physician or surgeon."

"Specific Total Losses. In event of any of the following specific total losses, occurring within four months from date of accident which shall result from bodily injuries caused and occurring as stated in Paragraph (A), the Company will pay the amount herein specified for such loss, in lieu of all other indemnity under this policy."

Following this paragraph, the specific indemnities for the specific losses as set out in the certificate, including loss of life, were set forth:

"Illness Indemnity for Total Disability. At the rate of monthly indemnity provided by each insured's certificate under this policy for total loss of time, not exceeding twelve consecutive months, that the insured by reason of sickness beginning after this policy dated shall be wholly and continuously disabled and prevented from performing any and every duty pertaining to his or her business or occupation and is actually attended by or calling upon a legally qualified physician professionally."

Under the terms of the policy, indemnity for loss of life to the insured was payable to the beneficiary, if surviving the insured, and otherwise to his estate. All other indemnities were payable to the insured.

The policy contained a further provision as follows:

"No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company and such approval be endorsed hereon."

The policy was dated and became effective on the 15th day of June, 1931, and was countersigned by W. K. Page, the general agent of the defendant company at Memphis, Tennessee.

At the time the policy was solicited and issued, the complainant was an employee of the United States Post Office at Memphis, Tennessee, De Soto Station, and a member of the insured association. It is conceded that he is totally disabled within the meaning of the terms of said policy, and that his disability is due to pulmonary tuberculosis of the lungs, with which he has been afflicted since August 23, 1923, and that he knew that he was afflicted with this disease at and prior to the time the policy sued on was issued. His suit is predicated upon the theory that at the time the insurance was applied for and the policy issued pursuant thereto, the defendant's agents were fully advised of the fact that he was afflicted with pulmonary tuberculosis, and that therefore the defendant must be held to have waived that provision of the policy which insured the complainant only against sickness beginning after the date of the policy. In response to this contention, the defendant denies that

any one authorized to bind it had knowledge of complainant's affliction with said disease at the time said policy was applied for and issued, and further that under the unambiguous terms of the policy it does not cover disability resulting from illness beginning before the effective date thereof.

The complainant assigns seven errors, but the only question involved is whether the defendant waived the provision insuring complainant against total disability "by reason of sickness beginning after this policy is dated;" it being, as stated, conceded that the complainant's present disability for which he sues, resulted from pulmonary tuberculosis with which he was afflicted at the time the policy was issued and long prior thereto.

The defendant's agent in West Tennessee was W. K. Page. He was a general agent within the meaning of the law. He had formerly organized or procured the organization of the mail carriers working out of the Memphis Post Office into an association and had issued a group policy of insurance to them. He desired to form a like group of the clerks working in the Memphis offices. A minimum of 25 members was required before the group policy could be issued. In order to form this group it was necessary to contact the clerks. To facilitate this, he enlisted the aid of T. M. Tippler, who had for a long number of years been employed in the Memphis Post Office, but who was at the time retired on a pension. Tippler stood well with the authorities of the Memphis Post Office and knew all the clerks. Through his efforts, Page succeeded in gaining entrance to the Post Office and talking to the clerks in a group. Tippler, with Page's knowledge, enlisted the aid of one Schultz, who was at the time employed as a clerk in the De Soto Station. Through the efforts of Page, Tippler, and Schultz, the association named as the insured in the group policy was formed and certificates similar to that issued to the complainant were issued to each member thereof. The only object and purpose of the formation of this association was to enable the defendant to issue the group policy of insurance.

The complainant was first solicited by Tippler to become a member of the group and apply for the insurance, and he testifies that at this time he informed Tippler that his illness had been diagnosed as that of tuberculosis; that hospital treatment had been recommended for him by the Veterans' Bureau; and that he could not enter into a contract of insurance on this account. He further testifies that he was later solicited by Schultz, and that he told Schultz substantially the same thing; that Schultz thereupon told him that he would be taken care of. That both Tippler and Schultz gave as an example that he would be taken care of notwithstanding the fact that he had the disease referred to, by referring to a case of an employee of the Cross Town Station of the Memphis Post Office, who, at the time a certificate was issued to him under a group policy,

was suffering from hernia and who immediately went to a hospital for an operation and was paid by the defendant company on account of the disability resulting therefrom. There is other evidence to the effect that both Tippler and Schultz advised complainant that he was working at the time and that that was all that was necessary.

Schultz and Tippler deny that they were informed by the complainant or anyone else that he had tuberculosis, but Schultz at least knew that he had been off duty for thirty days or more prior to his application for the insurance, and he testifies that he heard that complainant had had influenza. He further testifies that he knew that complainant had filed a claim for compensation with the Veterans' Bureau, and knew that he was not well.

The defendant's first contention is that Tippler and Schultz had no contractual relationship with the defendant company and they were not its agents in the sense that any knowledge of the complainant's condition acquired by them in the solicitation of the insurance was imputable to it. This contention cannot be sustained. It appears without dispute that Page was the general agent of the defendant company. He represented the defendant in twenty-one counties in West Tennessee. Unquestionably he employed Tippler to assist him in the formation of the association named as the insured in the group policy and to solicit applications for the insurance and collect premiums thereon. He had knowledge of the fact and authorized the employment of Schultz in a like capacity by Tippler. Both were furnished with application blanks and premium receipt books, and both collected premiums on policies issued by the defendant company. Schultz collected the first and second premiums from the complainant, and Tippler the third and last. Both issued renewal receipts therefor which under the terms of the policy operated to renew it for the period stated in such receipts. As his compensation for his work, the premiums on similar certificates issued to Schultz were paid by Page. Tippler received a percentage of Page's commissions for his services. Tippler and Schultz were, to say the least of it, clerks or subagents, employed by the defendant's general agent, Page. The act or knowledge of such clerks or subagents is that of the general agent and as such binds the principal. Aetna Life Ins. Co. v. Fallow, 110 Tenn., 720, 77 S. W., 937, 14 R. C. L., sections 341 and 1160, and Note.

The defendant next contends that if Tippler and Schultz be considered the agents of the defendant that the proof falls short of showing that at the time the policy was issued they were informed of the fact that complainant was suffering from tuberculosis. At the time in question, the complainant was employed in the Post Office, but shortly prior thereto he had been off duty for more than thirty days due to illness. The preponderance of the proof is

against the defendant's contention in this respect, and we find as a fact that at the time said insurance was solicited that Tippler and Schultz knew that the complainant had tuberculosis.

The certificate was issued to the complainant on a written application signed by him, in which he stated, among other things, that he was at the time in sound condition, mentally and physically. A photostatic copy of the application appears in the record, and in response to a cross-interrogatory prounded to him on behalf of the defendant, the complainant testifies that he signed it. On the trial, the introduction of this application and the answer of the complainant to the cross-interrogatory referred to was excepted to by the complainant on the ground that it was no part of the contract for the reason that said application was not incorporated in or attached to the policy as required by the statute. Code 1932, section 6086.

In response to this insistence, it is sufficient to say that it sufficiently appears from the memorandum opinion filed by the chancellor that the complainant's exception was sustained. In the next place, the defendant's defense is not based upon the false statement made in the written application.

The defendant's principal contention is that regardless of whether or not Schultz and Tippler be considered agents of the defendant, and regardless of whether or not they had knowledge of the complainant's physical condition at the time the application was taken and the policy issued, that the complainant still has no right of action on the policy for the reason that under the express terms thereof it covered only disability or loss of time occasioned by reason of sickness beginning after the date of the policy. This contention must be sustained. The provision of the policy relied upon is a valid one. In 6 Couch on Insurance, section 1263, page 4668, speaking with reference to health and accident insurance, it is said:

"In some instances liability is expressly limited to sickness arising after the issuance of the policy, or after a specific time thereafter, and such a provision, of course, precludes recovery where the illness was contracted or suffered prior to the time specified. The same is true where the policy provides indemnity against illness contracted while the policy was in full force."

In the case of Williams v. Insurance Co., 163 Tenn., 262, 43 S. W. (2d), 215, the Supreme Court expressly held that it was competent for the parties to contract for a limited liability. In support of the holding the court quoted from 14 R. C. L., 1225 as follows:

"An insurer of life, may, of course, make such exceptions from the risk assumed as it sees fit. It may provide that there shall be no liability on the part of the insurer if the insured die within a

year from some cause or disease excepted from the general provision of the contract of insurance.''

In the case of National Life Insurance Co. v. Jackson, 161 Ark., 597, 256 S. W., 378, the Supreme Court of Arkansas had to consider a situation very similar to that in the instant case. In that case the beneficiary in a life policy brought suit to recover thereon the amount alleged to be due her on a policy issued in her favor on the life of her son. Application for the policy was made on the 18th day of April, 1922. The policy was dated May 15, 1922, and the insured died of tuberculosis on the 16th day of June, 1922. One of the conditions of the policy was as follows:

''No liability is assumed by the company for any accident, illness, or disease occurring or contracted prior to the date hereof or any death arising therefrom.''

The mother of the insured testified that she did not know that her son had applied for the policy until after he had done so; that thereafter she paid the agent of the insurance company the premium on the insurance policy; that when the policy was applied for it was easy to tell that the insured was sick; and that he had been sick with consumption since February preceding the issuance of the policy.

The agent of the company testified that he did not know insured had tuberculosis at the time he applied for the policy, nor at the time the policy was delivered to him; that if he had known that insured had tuberculosis, he would not have taken the application; that there was nothing in his physical appearance to indicate that he was so afflicted. He denied that the mother of the insured had told him that her son was sick at the time the policy was issued.

The medical testimony was to the effect that the insured had been suffering from tuberculosis for some time prior to his death on the 16th day of June, 1922.

On the trial of the case the court instructed the jury that if it should find that the agent of the insurance company had knowledge that the insured had tuberculosis at the time the policy was written or delivered, the insurance company would be liable. Upon an appeal by the company from an adverse decision in the lower court, the Supreme Court of Arkansas held that the trial judge was in error in instructing the jury to the effect above mentioned, and in this connection said:

''The court erred in giving this instruction. It is true that the general rule of law imputing to a principal notice of facts learned by his agent in the discharge of his duties applies to insurers; but this principle has no application under the terms of the policy sued on. As will be seen from our statement of facts, one of the conditions of the policy is that no liability is assumed by the company

for any accident, illness, or disease occurring or contracted prior to the date thereof, or any death arising therefrom.

"It is well settled that policies of insurance must be interpreted according to the plain import of the language used in them, where there is no ambiguity in it. The clause in question in plain terms provides that no liability is assumed by the company for death arising from a disease contracted prior to the date of the policy. The testimony of the beneficiary herself, as well as that of the physician who attended the insured in his last illness, shows that he had tuberculosis at the time the policy was applied for and issued, and that he died of that disease. All the attending circumstances corroborate their testimony. The policy was issued about the middle of April and delivered about the middle of May. The insured died of tuberculosis on the 16th day of June thereafter. Thus the undisputed evidence shows that the insured had tuberculosis at the time the policy was issued to him, and died of the disease within a short time thereafter. There is no statute in this state, or ground of public policy, which would prevent a contract of this sort from being valid. Hence the parties are bound by the provisions of the contract which they made. . . .

"Inasmuch as the undisputed evidence shows that the insured had tuberculosis at the time he applied for the policy, and it was issued, and that he died from that disease a short time after the policy was issued, under the express terms of the policy the insurance company was not liable, and the circuit court erred in not directing a verdict for it."

The complainant predicates his contention in this case upon the general rule approved by the Supreme Court in the case of Life & Cas. Ins. Co. v. King, 137 Tenn., 685, 195 S. W., 585, 589, as follows:

"That where the insurer, at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted upon, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts and the insurer is estopped thereafter from asserting the breach of such conditions."

The reason for the foregoing rule is stated to be:

"The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it void at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition, and to execute a binding contract, rather than to have deceived the insured into thinking his property is insured when it is not, and to have taken his money without consideration."

In the King case the condition of the policy, which, it was in-

sisted that the insurer was estopped to rely upon, and which the Supreme Court had under consideration in announcing the above rule, was as follows:

"The applicant must be alive and in sound health when this policy is delivered, and no liability is assumed by the company prior to the date hereof, nor unless on said date and delivery of this policy the first payment has been legally made."

The complainant contends that there is no material difference in the clause above quoted in that relied on by the defendant in the instant case confining the liability of the defendant for total loss of time "by reason of sickness beginning after this policy is dated . . . ." We cannot agree to this contention. In the King case the court was dealing with an insistence by the insurance company that the policy was forfeited for breach of one of its conditions. The rule announced is based upon the assumption that except for the waiver, the contract would be invalid from its very inception. Such is not the case presented here. The defendant company is not insisting that the policy has been forfeited. Upon the other hand, it insists that the policy is a valid contract of insurance, but that the disability suffered by the complainant, and for which he sues, is specifically exempted from the terms thereof. This insistence is sound. It is not necessary to hold that the defendant company waived the provision of the policy relied upon by the complainant in order to hold that the contract is valid.

In a supplemental brief, the complainant insists that the recent case of McLain v. American Glanzstoff Corp. (Tenn. Sup.), 57 S. W. (2d), 554, supports his contention. We think this case is authority for the contrary position. There the insurance company issued a group insurance policy on employees of the defendant corporation. The complainant was one of such employees and the bill averred that he had become totally disabled. The certificate issued complainant certified that his life was insured for $1,100 payable to his wife. It also provided that insurance should become available to any employee becoming totally disabled, and contained the following notice to those covered by the policy: "This certificate covers you for total and permanent disability as well as death if either occurs during the continuance of this insurance while you are in the employ of the American Glanzstoff and American Bemberg Corporations. However, after the age of sixty the total and permanent disability benefits do not apply."

At the time the certificate was issued to him, the complainant was sixty-one years old. The complainant, although admittedly not within the protection of the total disability provision of the policy, relied upon the rule applied in Life & Casualty Ins. Co. v. King, supra, and relied upon in the instant case. Responding to this contention, the Supreme Court said:

"This rule has not application here.

"If the policy had insured against total disability alone and the insurer knew that complainant was 61 years old at the time the contract was written, the insurer, under this rule, would be estopped to rely on a provision of the policy excepting from total disability benefits any insured over 60 years of age.

"Here, however, the contract of insurance covers the life of the insured for the benefit of his wife, is a valid contract in that respect, not void from its inception. The contract merely excludes from its total disability benefits employees over 60 years of age."

In the instant case the contract merely excludes from its coverage disability resulting from sickness beginning before the policy was effective. With resect to disability resulting from any illness beginning after the policy was effective, it was and is a valid contract. Not only this, but it provided for a monthly indemnity for total loss of time resulting from accidents occurring under the circumstances set out in the policy and also for the payment of $1,000 for the loss of life and certain other specific losses mentioned therein. In these respects it was and is a valid contract of insurance. It cannot, therefore, be said to be void from its inception.

The rule announced in Life & Cas. Ins. Co. v. King, supra, upon which the complainant's case is predicated, has no application in the instant case for the same reason that it was held by the Supreme Court to have no application in the case of McLain v. American Glanzstoff Corporation, supra.

The result is that the assignments of error are overruled and the decree of the chancellor is in all things affirmed, at the cost of the complainant.

Senter and Heiskell, JJ., concur.