## Aetna Life Insurance Company of Hartford, Conn. v. Gullett.

(Decided March 23, 1934.)

EDW. L. ALLEN for appellant.

J. L. HARRINGTON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal requires a review of a trial of an action on a group policy issued by the Ætna Life Insurance Company of Hartford, Conn., to the North East Coal Company, insuring the latter's employees subject to the provisions of the policy.

The North East Coal Company was engaged in mining coal at Paintsville, Johnson county, Ky. Mack Gullett was its employee engaged in loading coal. The policy was issued and delivered September 17, 1923, and protected Gullett as an employee of the North East Coal Company if he became "totally and permanently disabled from injury or disease before attaining the age of 60 years," in the sum of $1,300, payable at the time and in the manner provided in the policy and the certificates thereunder issued and delivered to him.

After setting out the terms and provisions of the policy as the basis of his recovery, he alleged that while he was under 60 years of age, the policy was in full force and effect, the premiums thereon fully paid, and on or about the 1st day of August, 1931, "he became totally and permanently disabled by paralysis of left side of face, loss of hearing in right ear, loss of vision

of left eye, neuritis of left hip, and thigh, and is now totally and permanently prevented for life from engaging in any work of financial value." He alleged that proof of his permanent total disability was furnished in accordance with the provisions of the policy to the Ætna Life Insurance Company through the North East Coal Company, and payment demanded in accordance with the terms of the policy. His demand was refused, hence this action.

During the progress of the trial, with leave of court, his petition was amended wherein he adopted the allegation of the original, and further alleged that more than six months before the cancellation of the policy he "began to suffer with a disease commonly known as heart trouble, frequently referred to as leakage of the heart and that the trouble or leakage of the heart began in the year 1930," and he had "continued to suffer with heart trouble from that time until the present, and is now suffering with" it, which, he avers "permanently and totally disabled him from performing manual labor for compensation of financial gain and had been for more than six months before the commencement of this action."

The action was filed July 22, 1932. The Ætna Life Insurance Company traversed the petition pleaded as a bar, this language of the policy:

"If you are sick or absent on account of other excusable causes you are requested to report same immediately to this office. After ten days of unexplained absence it [the policy] will be cancelled."

The policy provides:

"If total disability of any employee entitled to insure, * * * and if due proof be furnished the company after such disability, has existed for a period of six months and if such disability presumably will during lifetime prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of this policy."

The company relied on the above clause and alleged "that such disability, if at all, has existed for a period of much less than six months next before filing this suit and plaintiff is here barred from prosecuting this action."

In paragraph four of its answer, it pleaded a cancellation of the policy on the 1st day of January, 1932, in accordance with its provisions, and alleged Gullett's disability "began, if at all, for a period of much less than six months next prior to the date of cancellation," and the cancellation was a bar of his right to recover.

On the issues thus formed, on a trial with the intervention of a jury, a verdict was returned in favor of Gullett for $1,300.

For reversal it is diligently and earnestly urged by the insurance company that incompetent evidence was admitted; it was entitled to a directed verdict; error in instructions given, and error of the court in refusing offered instructions. A disposition of these errors requires a review of the developed evidence.

Gullett was 52 years old, and had been in the employment of the North East Coal Company, engaged at mine work, 15 or 16 years. The company in August, 1931, laid off all of its employees who were not living in the camps with the understanding they would be called back within a short time. Not calling Gullett, he returned and sought work of the mine foreman, and failed to obtain it.

About two years before he was laid off he claims he sustained an injury to his left side and leg; he had trouble with his left eye; a piece of coal got in his ear, which was removed by a physician; about two years before he testified, his left side began to hurt and give trouble; his face was drawn, left eye almost out; could not straighten his left arm without the use of his right hand and could not sleep on his left side. He was treated when he would call at the hospital by Drs. Castle and Picklesimer. They treated him occasionally for about one year next before June 2, 1932. He also claimed that about two and a half years before the trial he suffered of heart trouble, shortness of breath, accompanied with weakness, and similar spells occurred frequently thereafter. At the time he was examined by the physicians on June 2, 1932, they diagnosed his trouble as "chronic myo-carditis," manifested by a weakness of the muscles and valves of the heart; the valves of the heart did not act properly and the blood supply would regurgitate back into the chambers of the heart. This condition produced shortness of breath and nervousness. It was the opinion of these physicians that the condition

of his heart at the time they examined him in June, 1932, was "possibly" the cause of his condition as Gullett described it two and a half years before the trial. At the time the physicians examined him he was suffering with partial paralysis of the face, or "Bells Palsy." It was the opinion of Drs. Castle, Pickelsimer, and Wells that at the time of their examination of Gullett in June, 1932, and also at the time of the trial, he was "totally and permanently disabled," and that his disability would continue and prevent him for life from engaging in any labor or work.

In August, 1932, Drs. Hall, Holbrook, and Archer examined Gullett, giving him a thorough examination, and found no impairment other than "he complained of being nervous and the movement of one of his legs"; his heart was normal. In fact they discovered no ailment other than "Bells Palsy," which did not interfere with his performance of manual labor. It was their opinion Gullett was able to do any ordinary work about the mines. After Gullett ceased to work for the North East Coal Company, for a short period of time he worked irregularly for the Sandy Valley Grocery Company. He signed its compensation register on the 27th day of August, 1931. His place of work was in the wareroom where flour and groceries were loaded and unloaded into a truck. It is shown that he came and asked for work, and because he needed help this company "gave him some extra work to help him out." "It was not interested in what he did or how he did it." It did not care about "whether or not he was able to work." At the time he was in its employment his face was drawn and his eyes were bloodshot, with the lids drawn down. The superintendent of the North East Coal Company produced its record showing "the working force was laid off in August, 1931." The group policy was canceled at noon, January 1, 1932.

This is a summary of the evidence in behalf of the parties. Since a reversal is required on another ground, we express no opinion as to the sufficiency of the evidence to warrant the submission of the case to the jury, nor as to the question whether the verdict is palpably against the weight of the evidence; except to say the burden of proof was on Gullett to prove he became totally and permanently disabled within the terms stipulated in the policy. Bowen v. Metropolitan Life Ins. Co. (Tenn. App.) 67 S. W. (2d) 164. John Dale, mine

foreman, was permitted to testify Gullett was "not able to and did not do the same amount of work that he had been able to do" prior to the time he was laid off in August, 1931. Not being a physician, he was not qualified to express an opinion. A layman may testify to a thing within his knowledge concerning apparent conditions of another, but he may not express his opinion, since he cannot diagnose disease or give expert evidence with reference thereto. Equitable Life Assur. Soc. v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703, and cases cited. The court improperly overruled the objection to this question to the witness and his answer calling for his opinion.

The court gave to the jury four instructions; one defined total disability; another defined the phrase, "such disability presumably will during life-time prevent such employees pursuing any occupation"; the third authorized a verdict for Gullett if the jury believed from the evidence as therein set out; the fourth informed the jury the number of them required to agree on and sign a verdict. The insurance company offered instruction A, which reads:

"The Court instructs the jury, that the group policy of insurance No. 1949, under the provision of which, the certificates of insurance sued on herein were issued, was cancelled by the defendant, Ætna Life Insurance Company, on January 1, 1932, and if you believe and find from the evidence that plaintiff's permanent and total disability, if any, originated or began for a period of less than six months next before January 1, 1932, then, in such event, the law is for the defendant and you should so find."

Instructions Nos. 1 and 2 properly define the term and the phrase therein as they have often been defined by this court. Travelers' Ins. Co. v. Turner, 239 Ky. 191, 39 S. W. (2d) 216; John Hancock Mut. Life Ins. Co. v. Cave, 240 Ky. 56, 40 S. W. (2d) 1004, 79 A. L. R. 848; Columbia Cas. Co. v. McHargue, 246 Ky. 93, 54 S. W. (2d) 617; Equitable Life Assur. Soc. v. Fannin, supra. Instruction No. 3 is improper for more reasons than one, and should not have been given. It is agreed that the policy was canceled January 1, 1932. Gullett was temporarily laid off by the North East Coal Company in August, 1931. He was absent from his employment on account of being laid off for a period of more

than 10 consecutive days. The language of the policy in this respect is:

"After 10 days of unexplained absence it [the policy] will be cancelled."

His absence from work for more than 10 days because he had been laid off, explained itself. Ætna Life Ins. Co. of Hartford, Conn. v. Castle, 252 Ky. 228, 67 S. W. (2d) 17, 20. His absence under the circumstances was not such leaving his employment as to come within the term "an unexplained absence," as it is used in the policy.

The group policy is a contract between the Ætna Life Insurance Company and the North East Coal Company for the benefit of its employees. No doubt exists of Gullett's right to sue thereon, but the rule in such case is:

"One who sues on a contract made for his benefit must accept the contract as it was made."

Western Union Tel. Co. v. Douglass, 104 Tex. 66, 133 S. W. 877; Id. (Tex. Civ. App.) 124 S. W. 488; Kingsland v. Mo. State Life Ins. Co. (Mo. App.) 66 S. W. (2d) 959, 961. Therefore, Gullett's right to recover on the policy, and certificates issued thereunder, was subject to the provisions of the policy conferring the right of the insurance company to cancel the policy as therein provided. To defeat his right of recovery by a cancellation, it must be made before the liability to him attached. Kingsland v. Mo. State Life Ins. Co., supra; Mid-Continent Life Ins. Co. v. Christian, 164 Okl. 161, 23 P. (2d) 672; Thompson v. Pac. Mills et al., 141 S. C. 303, 139 S. E. 619, 55 A. L. R. 1237; Davern v. Travelers' Equitable Ins. Co., 172 Minn. 19, 214 N. W. 468; Home Acc. Ins. Co. v. Pleasant, 36 Ariz. 211, 284 P. 153; Baker v. Travelers' Ins. Co., 202 N. C. 432, 163 S. E. 110; Hasterlik v. New Jersey F. & P. G. Ins. Co., 229 Ill. App. 604; Monast v. Manhattan Life Ins. Co., 32 R. I. 557, 79 A. 932; Couch on Insurance, sec. 1435, page 5079; Ætna Life Ins. Co. of Hartford, Conn. v. Castle, supra.

The insurance company was without right to deprive him of a claim under the policy that had originated while he was employed, resulting in a disability totally disabling him for six months next before the date of the cancellation of the policy on January 1, 1932. The company is liable to him therefor under the policy if it originated from a disability that became total and

permanent within the meaning of this term as it is used. in the policy, six months before the date of cancellation. See Davern v. Travelers' Equitable Ins. Co., supra. In other words, we conclude that the policy did not protect him in case of total disability, other than that total disability provided for therein. This interpretation of a policy was given a clause similar in phraseology in a group policy, by the court in Kingsland v. Mo. State Life Ins. Co., supra. This being true, the court erred in writing instruction No. 3 so as to authorize the jury to find a verdict for Gullett if he became totally disabled six months prior to July 22, 1932.

Gullett's petition as amended alleges, and the evidence offered to support its allegations tends to establish, that his disability originated before he was laid off by the company in August, 1931, and reached a degree of total disability within the meaning of this term as it often has been defined by this and other courts, more than six months next before January 1, 1932, the date of the cancellation of the group policy. On this theory the court should have instructed the jury. The evidence as to the date of the cancellation of the policy not being disputed, the question of cancellation was one of law to be determined by the court, and the instructions to the jury should be framed accordingly.

In Ætna Life Ins. Co. of Hartford, Conn., v. Castle, supra, an instruction similar in phraseology to instruction No. 3 in the present case was given; also, one similar to instruction A offered by the insurance company. Of these instructions in the Castle Case, the court said:

"Doubtless the instruction [No. 3] is technically incorrect, but, in view of instruction No. 1, which told the jury that the policy was canceled on January 1, 1932, and that if they should believe from the evidence that plaintiff's permanent and total disability, if any, originated or began for a period of less than six months next before January 1, 1932, they should find for the defendant, and of the uncontradicted evidence to the effect that plaintiff's disability began much more than six months before the policy was canceled we are constrained to hold that the defect in the instruction was not prejudicial to appellant's substantial rights."

The error in instruction No. 3 in the present case was not cured by an instruction similar to No. 1 in the Castle Case.

552

For reasons indicated, the judgment is reversed, with directions to award the Ætna Life Insurance Company of Hartford a new trial, and for proceedings consistent with this opinion.