Argued April 21; reversed July 14, 1942

# DULLUM *v.* NORTHERN LIFE INSURANCE CO.
### (127 P. (2d) 749)

234

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN, and BRAND, Associate Justices.

*John J. Coughlin*, of Portland (Griffith, Peck, Phillips & Nelson, of Portland, on the brief), for appellant.

*Roy R. Hewitt* and *George A. Rhoten*, both of Salem (Rhoten & Rhoten, of Salem, on the brief), for respondent.

236

■■ BRAND, J. It is elementary that the complaint must set forth that the plaintiff has suffered a disability as defined in the policy. By comparing the provisions of the policy with the allegations of the complaint, it will appear that the "disability" covered by the policy means bodily injury or disease which, independently of all other causes, prevents the insured from performing any work or following any occupation for wages or profit. The complaint contains no such allegation, but on the contrary alleges that "on account of such disability the plaintiff could not and did not perform any of the duties of *said occupation*", namely, that of a rural mail carrier. The disability covered by the policy is one which "will, presumably thereafter during his entire life, prevent him from performing any work or following any occupation for compensation or profit." There is no such allegation in the complaint, nor is there any allegation that the disability is permanent or that it will continue, presumably, for any period of time, the only allegation being that the disability has continued up to the time of filing the amended complaint.

There is a material distinction between an occupational policy under which the insured is entitled to benefits if he is totally disabled on account of which he can perform none of the duties of his occupation, on the one hand, and a policy conditioned upon the inability of the insured to perform any work or follow any occupation for wages or profit, on the other. This was not an occupational policy; therefore it became necessary for the plaintiff to allege the greater degree of disability required by the plain terms of the policy. App. 241, 23 N. E. (2d) 802 (1939); *Buffo v. Metropolitan Life Insurance Co.*, 277 Ill. App. 366 (1934); *Garms v. Travelers Insurance Co.*, 273 N. Y. S. 39,

242 App. Div. 230, affirmed in 266 N. Y. 446, 195 N. E. 147 (1934); *McKillips v. Railway Mail Association*, 10 Wash. (2d) 122, 116 P. (2d) 330 (1941); *American National Insurance Co. v. Briggs*, (Texas) 70 S. W. (2d) 491 (1934); *Parten v. Jefferson Standard Life Insurance Co.*, 30 Ga. App. 245, 117 S. E. 772 (1923); *Lee v. New York Life Ins. Co.*, 188 N. C. 538, 125 S. E. 186 (1924); *Nickolopulos v. Equitable Life Assur. Soc.*, 11 N. J. Misc. 371, 166 A. 178 (1933), 113 N. J. L. 450, 174 A. 759 (1934); *Cooper v. Metropolitan Life Ins. Co.*, 317 Pa. 405, 177 A. 43 (1935); *Prudential Ins. Co. of America v. Davis*, 18 Tenn. App. 413, 78 S. W. (2d) 358 (1934); *Sibley v. Travelers Insurance Co.*, 275 Ill. App. 323 (1934); *Mutual Ben. Health & Accident v. Bain*, 242 Ala. 471, 6 So. (2d) 599 (1942).

In the case of *Fagerlie v. New York Life Insurance Co.*, 129 Or. 485, 278 P. 104 (1929), a second cause of action was founded upon a policy which provided that "if the insured becomes wholly and permanently disabled" the company will pay a sum specified. It was further provided that disability should be deemed to be total whenever the insured becomes wholly disabled by bodily injury or disease so as to prevent him from engaging in any occupation whatsoever for remuneration or profit. The trial court instructed the jury as follows:

> "On the other hand, if you find from the evidence, * * * that having due regard for care and prudence, he could carry on some occupation for remuneration or profit, or will be able to in the future carry on some occupation for remuneration or profit, then you cannot say that he is totally and permanently disabled."

It was held that the instruction covered the issues and fairly submitted the case to the jury.

The demurrer to the first cause of action should have been sustained.

■ The first cause of action, as stated in the amended complaint, contains a general allegation that the plaintiff has duly performed all of the conditions of the agreement and policy. The policy provides that

"If the insured shall furnish affirmative proofs that   *   *   *   before attaining the age of 60 years he has become disabled   *   *   *   and that such disability has continued for not less than 90 days"

the company will grant the specified benefits. Having alleged full performance, it was necessary for the plaintiff to show that he furnished the proof of claim as required by the provisions of the policy. He could not bring suit until the requirements as to the proofs had been complied with. *Bruce v. Phoenix Ins. Co.,* 24 Or. 486, 34 P. 16 (1893); *Stinchcombe v. New York Life Insurance Co.,* 46 Or. 316, 80 P. 213 (1905); *Hoffman v. Employer's Liability Corp.,* 146 Or. 66, 29 P. (2d) 557 (1934).

■ The proof of claim which the plaintiff furnished to the defendant specifies October 27, 1937, as the first day of his disability and continues as follows: "And ever since said time has been and is now and will presumably thereafter during his entire life be prevented from performing any work," etc. The proof of claim was filed on the 20th day of November, 1937. Having been filed less than one month after October 27, it obviously could not and did not allege that the disability had continued for 90 days, yet such proof of continuing disability was required by the terms of the policy. Both the allegations and proof established that the plaintiff continued work until October 27, 1937. In filing his proof of claim before his disability

had continued for 90 days, plaintiff acted prematurely. This is not merely a defective proof of a good claim. Here we have a proof of claim which affirmatively discloses that the conditions on which liability depended had not occurred at the time of filing the proof. Assuming that the plaintiff's disability in fact existed within the terms of the policy and continued for more than 90 days after its inception and before suit was filed, this objection based on the premature filing of the proof of claim would become highly technical, and it may very well be that the defect in the proof of the claim has been waived. *Schmurr v. State Insurance Co.*, 30 Or. 29, 46 P. 363 (1896); *Misskelley v. Home Life Ins. Co.*, 205 N. C. 496, 171 S. E. 862 (1933); *Fagerlie v. New York Life Ins. Co.*, (supra); *Independent Life Insurance Company of America v. Downey*, 255 Ky. 95, 72 S. W. (2d) 1008 (1934).

■ The plaintiff, however, is not pleading a waiver concerning the provision requiring proof of claim, but he has affirmatively alleged that all of the provisions of the policy were complied with. Plaintiff was not entitled to take advantage of waiver in view of the state of the pleadings. He cannot allege full performance and then prove waiver as an excuse for failure to perform. *Long Creek Building Association v. State Insurance Co.*, 29 Or. 569, 46 P. 366, (1896); *Waller v. City of New York Ins. Co.*, 84 Or. 284, 164 P. 959 (1917); *Mercer v. Germania Insurance Co.*, 88 Or. 410, 171 P. 412 (1918). It follows that the plaintiff was not entitled in this case to the benefits of any facts tending to indicate a waiver and that in the state of the pleadings error was committed in submitting the first cause of action to the jury. The error has been properly presented for review.

Notwithstanding the defects in the complaint and the errors noticed and to be noticed in the conduct of the trial, we think that there was evidence sufficient to go to the jury under proper pleadings and instructions, tending to show that the plaintiff was disabled within the meaning of the policy. See 98 A. L. R. 788 et seq. and *Great Southern Life Insurance Co. v. Johnson*, (Tenn.) 25 S. W. (2d) 1093 (1930).

Judgment on the first cause of action should be reversed and that cause remanded for a new trial.

In the lower court the plaintiff may appeal to the sound discretion of the trial judge for leave to file an amended complaint conformable to the plain requirements of the policy, and if, under the law and facts, it shall appear that the defendant has waived the defect in the proof of claim, plaintiff may in like manner apply to the trial court for leave to amend by alleging such waiver, if any. *Squires v. Modern Brotherhood*, 68 Or. 336 at 350, 135 P. 774 (1913); *Ringo v. Automobile Insurance Co.*, 143 Or. 420, 22 P. (2d) 887 (1933).

■ Since the case may be tried anew upon the first cause of action, we take notice of further prejudicial error in the instructions of the court. The jury was instructed as follows:

"The term disability in both policies does not mean a state of absolute helplessness but it does mean such disability as renders the insured unable to perform all the substantial and material acts necessary for the prosecution of *his business or occupation* in the customary or usual manner." (Italics ours.)

By this instruction the jury would have been justified in understanding that the condition of recovery on the first cause of action was inability to perform all

of the substantial and material acts necessary for the prosecution of the plaintiff's own business or occupation, namely, that of a rural mail carrier, whereas the policy requires proof of disability preventing the insured from performing any work or following any occupation for wages or profit. It is true that other instructions were given by the court containing a more accurate definition of disability which would warrant recovery on the first cause of action, but the instruction which is quoted was, we think, inconsistent and prejudicial.

■ The court also instructed the jury as follows:

"If you find plaintiff is now and was during the period between October 27, 1937 and August 27, 1940, suffering from disability, then on plaintiff's first cause of action you should allow plaintiff a verdict of $25.00 a month * * *."

This instruction also completely eliminates the provisions of the policy which require the plaintiff also to show disability which will "presumably thereafter during his entire life prevent him from performing any work or following any occupation for compensation or profit."

We think the last two instructions, to both of which exceptions were taken, were calculated to mislead the jury and would have required a reversal of the case even if the complaint were deemed sufficient. *John N. Adskim v. Oregon-Washington Railroad & Navigation Co.,* 129 Or. 169, 276 P. 1094 (1929).

■ In plaintiff's second cause of action he seeks recovery upon a health and accident policy which was also executed on the 2nd day of June, 1926. The policy is divided into two portions, the first relating to accident and the second to sickness indemnities. Concerning coverage on account of accident, the policy provides

that if the plaintiff suffers bodily injury effected solely through external, violent and accidental means and furnishes proofs that such injury

"* * * Resulted in the immediate, continuous and total disability of the Insured, on account of which he could perform none of the duties of his occupation, then the Company will pay him the Monthly Indemnity stated above so long as he shall live and suffer such disability, immediately on receipt of proofs; and, in case such disability continues, will pay such indemnity every two months on receipt of such proofs."

By the sickness indemnity provisions the defendant agreed that:

"If affirmative proofs be furnished the Company that the Insured has suffered from any sickness or disease contracted during the continuance of this insurance * * *"

and

"If such proofs as above show such sickness or disease not to have caused loss of sight * * * but that the Insured has thereby been totally disabled for not less than seven consecutive days, and on account of which he could perform none of the duties of his occupation and been under treatment of a licensed physician, then the Company will pay him the amount of the Monthly Indemnity last above stated, for the period of such total disability, not exceeding twelve months, and not extending beyond the time of death. After payment of monthly indemnity for twelve months as aforesaid, the Company will continue payment of such monthly indemnity thereafter, so long as the Insured during life shall be wholly and continuously disabled by such disease from engaging in any occupation or employment for wage or profit."

Under the heading "Accident and Health-Standard Provisions" it is further provided:

"Written notice of injury or of sickness on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury or within ten days after the commencement of disability from such sickness. In event of accidental death immediate notice thereof must be given to the Company."

and

"The company may cancel this policy at any time by written notice delivered to the insured or mailed to his last address, as shown by the records of the Company, together with cash or the Company's check for the unearned portion of the premiums actually paid by the insured, and such cancellation shall be without prejudice to any claim originating prior thereto."

The policy also provides:

"Compliance with the terms of this contract and the general and standard provisions hereof shall be a condition precedent to the validity of any claim hereunder and any claim not made in conformity therewith shall be forfeited to the Company."

In apparent reliance on the foregoing provisions of the policy, the plaintiff alleged in his second cause of action that the defendant, on June 2, 1926, executed and delivered to the plaintiff its policy of insurance No. AM32987,

"* * * Wherein and whereby defendant, in consideration of certain premiums paid and to be paid by the plaintiff to the defendant, undertook and agreed to and did insure the plaintiff against sickness and disability and defendant thereby agreed that should the plaintiff thereafter during the life of said policy be or become totally disabled

for not less than seven days on account of a disability which would prevent him from performing any of the duties of his occupation and which would cause him to be under the treatment of a licensed physician, then, and upon affirmative proof thereof to the defendant, the defendant would pay to the plaintiff a sum designated as monthly indemnity amounting to $100.00 monthly for the period of such disability. In addition thereto and as a part of said policy defendant agreed that it would waive the payment of any premiums becoming due on account of said policy during the continuance of such disability.''

''That heretofore and prior to May 1, 1936, and during the life of said policy plaintiff suffered a sacro-iliac sprain and a disability of plaintiff's back and the vertabrae and muscles thereof, and that on or about October 27, 1937, as a result thereof, plaintiff became totally disabled and plaintiff could not and did not perform any of the duties of his said occupation since October 27, 1937, continuously up to the time of the filing of this amended complaint and plaintiff has been continuously since October 27, 1937, until the filing of his amended complaint, under the treatment of a licensed physician.''

It is to be noticed, first, that the plaintiff set out in his complaint only provisions of the policy relative to sickness indemnity, making no reference to the provisions relative to accident, but in the allegations by which he seeks to bring himself within the terms of the policy, he asserts that he suffered a sacro-iliac sprain and disability and makes no allegation concerning sickness. The undisputed evidence discloses that the plaintiff was a rural mail carrier and that he suffered repeated injuries of a traumatic character commencing in 1929 and continuing for many years until a chronic condition had arisen and that the sacro-iliac

sprain resulted from the jarring incident to his work in driving over rough country roads in an ill-equipped vehicle. We are of the opinion that plaintiff has entirely failed to present any substantial evidence of sickness causing disability, but that, on the contrary, the disability was the result of injury. This becomes material because of the difference between the provisions of the policy concerning accident, on the one hand, and sickness, on the other. Plaintiff's evidence discloses that the injury was a continuing one but under the plain terms of the policy plaintiff was required to make affirmative proof that such injury resulted in the immediate, continuous and total disability of the insured, on account of which he could perform none of the duties of his occupation.

On May 1, 1936, the defendant company gave due notice of the cancellation of the policy under the provisions thereof, which provisions are required by O. C. L. A. 101-803 (h). The proof of claim was made on November 20, 1937, and names October 27, 1937, as the first day of plaintiff's disability. The complaint also alleges that the plaintiff became totally disabled on October 27, 1937, and the undisputed testimony shows that the plaintiff continued his work until that date. Assuming then that the plaintiff was injured prior to the cancellation of the policy on May 1, 1936, by suffering a sacro-iliac sprain, as alleged in the complaint, it conclusively appears that such injury did not result in the immediate, continuous and total disability of the insured. Pursuant to statute, the policy provides that the company may cancel "and such cancellation shall be without prejudice to any claim originating prior thereto." On the date of the cancellation the plaintiff had no claim because his injury had not resulted in immediate, continuous and total

disability, nor did any such disability arise according to both the allegations and the proof, until about eighteen months after the policy had been cancelled. Plaintiff is not entitled to any relief under the provisions of the policy concerning accident indemnities.

■ Notwithstanding the fact that the complaint contains no allegation of sickness or disability and that the testimony supports the theory of injury rather than disease, the plaintiff now seeks recovery in reliance on the provisions concerning sickness indemnity. He contends that:

"The policy makes special provision that the sickness or disease must be contracted during its continuance. It makes no provision that total disability must also occur during the continuance of the policy. It provides only that total disability must result from sickness or disease contracted during the life of the policy."

We are unable to agree with this construction. Reference to the sickness indemnity provision above quoted will disclose that affirmative proofs must be furnished that the insured has suffered from sickness or disease contracted during the continuance of the insurance. The proof of claim which was filed eighteen months after the cancellation of the policy stated only that the plaintiff was, on October 27, 1937, totally disabled, but it contained no statement that the plaintiff had suffered any sickness or disease or disability on or before May 1, 1936. Again, it was provided that in addition to affirmative proofs of sickness or disease contracted during the continuance of the insurance, proof must also show that the insured "has been thereby totally disabled * * *" and an examination of the entire policy discloses that compensation is not payable for sickness or disease alone but only for

disability. Again, referring to the provisions authorizing a cancellation of the policy but providing that such cancellation shall be without prejudice to any *claim* originating prior thereto, we are of the opinion that under the sickness indemnity provisions in question, no claim arose until, in addition to sickness or disease and by reason thereof, the insured has been totally disabled. See *Hill v. Connecticut General Life Ins. Co. of Hartford, Conn.*, 207 N. C. 166, 176 S. E. 269; *Aetna Life Ins. Co. of Hartford, Conn., v. Gullett*, 253 Ky. 544, 69 S. W. (2d) 1068.

At the top of the policy, we find the following statement:

> "This contract provides indemnity for loss of life, limbs * * * and for *loss of time through accident or sickness as herein specified.*" (Italics ours.)

This statement somewhat fortifies our conclusion that no "claim" can arise under the policy unless by reason of sickness there is a loss of time caused by disability.

In *Davern v. Travelers' Equitable Ins. Co.*, 172 Minn. 19, 214 N. W. 468 (1927), the plaintiff brought an action on an accident and health policy to recover sick benefits. The court said in part:

> "The policy insures 'against loss or disability' as therein defined." * * *

> "The insured, Mr. Davern, within the term of the policy, contracted a disease with which he was continuously afflicted until his death some months after the cancellation hereinafter discussed. That disease, although incurable and fatal, did not result at first in disability. Except as about to be stated, it was neither confining nor nonconfining within the policy definitions. It was confining for a period of nine days from November 28, 1922, a claim for which was paid by defendant. Thereafter there was

no disability and no confinement until after February 14, 1923, on which date defendant cancelled the policy pursuant to a term thereof authorizing it so to do, but 'without prejudice to any claim originating prior thereto'. Such a provision is authorized by statute. Section 3418 G. S. 1923.

"The question, then, is this: Given sickness contracted within the term of such a policy, can there be recovery for disability resulting from that sickness but beginning after cancellation?

"The argument for plaintiff is that the indemnity provided, while measured by the resulting disability, is in fact 'indemnity for sickness * * * contracted by the insured during the term of this policy.' We have given that argument attentive consideration, mindful that in case of real uncertainty the issue would have to be resolved for the insured under the familiar rule governing the interpretation of contracts of insurance. But, considering the whole contract, we find the conclusion irresistible that a claim thereunder originates not with the sickness but with the resulting disability, if any. No indemnity is provided for sickness alone, however serious and even though fatal, the only obligation against the insurer arising in case of disability. The claim for indemnity, therefore, begins with, that is, originates with, the disability. Hence a cancellation is effective as against any claim for a disability beginning thereafter."

And see *Kingsland v. Missouri State Life Insurance Co.*, 228 Mo. App. 198, 66 S. W. (2d) 959 (1933), where in a somewhat similar case the court said:

"Our conclusion is that no cause of action can be stated based upon a contract after it is completely terminated, which could not have been stated as a cause of action on that contract in the lifetime of that contract."

■ In seeking relief under the provisions of the sickness indemnity clause, the plaintiff is confronted by a further difficulty. The policy provides:

"Written notice of injury or of sickness on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury or within ten days after the commencement of disability from such sickness. In event of accidental death immediate notice thereof must be given to the Company."

If sickness without disability gave rise to a claim under the policy then notice would have been required within a reasonable or specified time after the onset of the sickness. But since notice of sickness is required only to be given within ten days after the commencement of the disability from such sickness the inference is clear that the claim arises upon the commencement of the disability, rather than the sickness. If sickness without disability gave rise to a "claim", then no notice of plaintiff's alleged sickness was given till eighteen months after cancellation and years after the inception of the sickness.

■ The theory of the plaintiff which was adopted by the trial court was incorporated in the following instruction which was given and to which exception was taken:

"If you find the plaintiff actually suffered from the condition which he claims and was suffering from that condition in its early stages on May 1, 1936, then the defendant had no right to cancel the policy on May 1, 1936."

If this theory were correct the coverage of such a policy would in effect continue for an indefinite period after it had been cancelled. If, long after notice of cancellation had been given as authorized by statute,

a total disability should arise, as, for instance, some form of heart trouble or tuberculosis which was traceable to a "condition" from which insured was suffering "at its early stages" prior to the date of cancellation, he would be entitled to the indemnities provided for total disability. On such a theory the insured might recover for a disability which commenced many years after the cancellation, without actual payment of any of the stipulated premiums accruing subsequently to the cancellation. No such construction can be placed on the policy in the case at bar.

The plaintiff cites cases in support of the proposition that a policy can be cancelled only prior to the time when liability attaches, never thereafter to defeat a claim thereon. We agree, but hold that liability did not attach prior to the cancellation. The plaintiff also asserts "the insurer is estopped to cancel the insurance contract if the insured is in such a condition that he cannot again secure insurance in a reputable insurance company." In the case at bar the complaint asserts a claim under the policy. The answer alleges that the policy was cancelled on May 1, 1936, prior to any claim made by the plaintiff. The reply is a general denial. The cancellation occurred eighteen months before the commencement of the alleged total disability. If the plaintiff desired to set up an estoppel against the defendant's plea of cancellation, it would have been necessary for him to allege and prove the facts constituting such estoppel. There is no such allegation in the reply, and we think no evidence in the record, to prove that at the time of the cancellation on May 1, 1936, the plaintiff was in such a condition that he could not again secure insurance in a reputable company. In the absence of such pleading and proof, it becomes unnecessary to determine whether or not

such a condition, if alleged and proved to have existed at the time of the cancellation, would estop the company from claiming cancellation in view of the express provisions of our statute, O. C. L. A. 101-803, expressly authorizing cancellation. We have grave doubts as to the validity of plaintiff's contention in this type of case, although there may be cases involving life, fire and perhaps other types of insurance in which the insurer would be estopped to claim cancellation of a policy in the face of imminent and impending loss, although no loss had yet occurred. *Treadwell v. International Travelers' Assur. Co.*, (Texas) 60 S. W. (2d) 536 (1933).

We have concluded that the plaintiff had no claim under either the accident or sickness indemnity provisions on the 1st day of May 1936, and that the company was authorized to and did on that date cancel the policy. The judgment on the first cause of action will be reversed, and that cause remanded for a new trial. Judgment on the second cause of action will be reversed, and the cause will be remanded to the court below with directions to enter judgment for the defendant thereon.