## Mason's Adm'x v. Prudential Ins. Co. of America et al.

May 12, 1942.

348

Earl S. Wilson and R. B. Bird for appellant.

E. R. Denney and Williams & Denney for appellees.

Opinion of the Court by Van Sant, Commissioner
—Affirming in part and reversing in part.

In the year, 1925, the Louisville & Nashville Railroad Company entered into a contract with the Prudential Insurance Company of America, whereby it was issued policy No. G-1788 insuring the employees of the railroad for death and permanent and total disability. The master policy was retained by the railroad company and certificates were issued to the employees. James Mason elected to be insured under this policy and accordingly received a certificate insuring him against total and permanent disability in the amount of $1000, should such disability occur while he was under 60 years of age, in the employ of the railroad company, and while the policy was still in full force and effect. The type of insurance is known as renewable term insurance. The contract as to each of those insured thereunder expired at the end of each 3 months' period, but was automatically renewed for a like period of time by payment of the premium for the fourth month, etc. The master policy contained a provision that by agreement of the insurance company and the railroad company the policy could be cancelled. By exchange of letters dated December 17, 1931, and December 19, 1931, those companies agreed to terminate the policy as of December 31, 1931. They thereupon entered into another contract of insurance providing for death benefits and special disability benefits for the employees of the railroad, but containing no provision for permanent and total disability. The premium Mason was required to pay under the first policy was in the amount of 85 cents per month while the premium for the benefits of the second policy was $1.05 per month. Both policies provided that all premiums were to be deducted from the payroll and paid in a lump sum to the insurance company. On the 9th day of April, 1935, Mason became permanently and totally disabled, and, in the year 1937, died.

Previous to his death he instituted an action, which was revived in the name of his administratrix, setting up the issuance of policy No. G-1788 and alleging that he was insured thereunder and that the railroad company and the insurance company had no right to cancel

the policy without his consent; that on or about January 1, 1932, he was asked by his foreman to sign an application for insurance under the new policy (which was numbered G-3688) but that he refused to do so and stated to his foreman at that time that he was in very poor health, was getting old, and did not want to change the insurance he had carried so long; that on numerous occasions thereafter he was solicited by officials of the railroad company to sign an application for insurance under the new policy, but that in each instance he refused; that the railroad company continued to deduct from his wages and pay to the insurance company certain sums of money in continuation of premiums on policy No. G-1788 which practice continued until after he became permanently and totally disabled on April 9, 1932; the amount it deducted was increased from 85 cents to $1.05 (which was the premium called for under the provisions of policy No. 3688); that after he became permanently and totally disabled his foreman obtained his signature to an application under policy No. G-3688, but that at the time he signed the application his foreman represented to him that it would be necessary for him to sign the card in order to get the insurance to which he considered himself to be entitled under policy No. G-1788 and that there was no other way he could collect the insurance; that at such time, which was after he became entitled to participate in the benefits of policy No. G-1788, he learned that the card he had signed was an application for a new and different policy of insurance which did not contain a provision for permanent and total disability; that he has made demand for the benefits of permanent and total disability under group life insurance policy No. G-1788 which had been refused. He prayed that the certificate issued to him under policy No. G-3688 be declared and adjudged null and void and that he be declared to be entitled to receive $1,000 by reason of being permanently and totally disabled under the provisions of policy No. G-1788. He further prayed for all appropriate relief.

Mason could neither read nor write but had learned to draw his signature. The railroad company introduced in evidence a card purporting to have been signed by authority of Mason but Mason testified he did not sign it and did not authorize anybody else to sign for him. The card is dated December 17, 1931, and reads:

"Louisville and Nashville Railroad Company    12296
Form 7148          Group Insurance Authorization Card

Cincinnati              Roadway                 Livingston, Ky.
  Division              Department                 Location

Name in Full (Print)        Jim Mason
P. O. Address               City
Street and No.              or
                            Town    Livingston    State    Ky
                                    Male X                 White
Occupation    Section Laborer    .    Female            Colored X
Date Born                                 Date entered service
Month of    October    Day 25    Year 1880        Sept. 5, 1922
Beneficiary    Mrs. Alice Mason                   Relationship
                                                       Wife
          (Full Christian Name of Beneficiary)

I hereby authorize the L. & N. R. R. Co., to deduct from my wages or salary the monthly contribution as indicated by "X" below to apply toward the premium for group insurance purchased through the Prudential Company of America. This insurance will become effective on the first day of January 1932.

[X] $1.05 Monthly        [ ] $2.10 Monthly        [ ] $3.15 Monthly
                                                         X
Date    December 17, 1931.    Signature    Jim Mason    His Mark

The railroad company and the insurance company claim that they considered the card to be an application for insurance under the new policy. The representative of the railroad company testified that he signed Mason's name at the direction of Mason. The proof that Mason signed the card is not sufficient for us to hold that he did so, but conceding that he did, there is nothing contained in the card which would put Mason on notice it was an application for insurance under policy No. G-3688. It was mere authority to deduct $1.05 monthly from his wages as a premium on group insurance purchased through the Prudential Insurance Company of America. It is true the card stated the insurance was to become effective on the 1st day of January, 1932, but assuming the card was read to Mason and that he authorized his name to be signed to it, we are of the opinion that it was susceptible of the construction that it effected a mere change in premium.

The agent for the railroad company who testified he was authorized to attach Mason's signature to the card, and who did procure it after Mason became per-

manently and totally disabled, testified that Mason declined to apply for insurance under the new policy but insisted that he wanted to continue his insurance under the old. This agent further testified that he told Mason the old policy had been cancelled, effective December 31, 1931, and that it was impossible for him to continue his insurance unless he applied under the new policy. We think the agent's testimony that he notified the insured that the railroad company and the insurance company had cancelled the old policy was sufficiently corroborated by the insured to establish the fact. Mason admits the railroad company persistently endeavored to obtain his application for the benefits of the new policy and that he told them he did not want to change. He did not deny the testimony of his foreman that he was informed the first policy had been cancelled. In procuring the insurance for the benefit of its employees the railroad company acted as agent of the employees. Such agency was ratified by application for coverage under the new policy and the contract completed upon acceptance of the certificate under the policy. Therefore the railroad company's act in cancelling the policy was the act of the insured. Equitable Life Assurance Society of United States v. Hall, 253 Ky. 450, 69 S. W. (2d) 977; Aetna Life Insurance Co. of Hartford v. Gullett, 253 Ky. 544, 69 S. W. (2d) 1068. The insurance and agency terminated upon the effective date of cancellation. Thereafter until authorized by an application under the new policy, the railroad company had no right to deduct premiums from Mason's earnings and because it did so without right, we have concluded that judgment should be rendered against it for the amount so deducted from January 1, 1932, until April 9, 1935, with interest on each item from the dates of such deductions. After January 1, 1932, the insurance company did not accept any premiums on policy No. G-1788 but accepted the sums deducted from Mason's earnings under the erroneous impression that they were premiums on policy No. G-3688. But counsel for the administratrix argue that the insurance company is estopped to deny its liability under policy No. G-1788 because it accepted the premiums deducted from deceased's wages, despite the fact that deceased had not applied for coverage under policy No. G-3688. This contention cannot be maintained because the evidence is conclusive that the insurance company was acting under the erroneous impres-

sion that Mason had elected to be insured under policy No. G-3688, and that it accepted the sums deducted from Mason's wages in payment of supposed premiums under that policy and not as payments of premiums under the policy which had been cancelled. Unquestionably the railroad company was deducting the premiums in the hope that Mason would elect to be covered by the new policy and the railroad company led the insurance company to believe that he had done so. But the railroad company had no authority to bind the insurance company. It was acting in its assumed capacity as agent of Mason. Since Mason had notice that policy No. G-1788 had been cancelled, he was not misled by the deduction of sums which were erroneously applied as premiums on the new policy. He lost no benefit under policy No. G-1788 by reason of the conduct of the insurance company in accepting the sums it conceived to be in payment of premiums under policy No. G-3688, because all benefits under No. G-1788 had ceased. To effect an estoppel it is necessary that one party by his conduct mislead the other to his prejudice. Owens v. National Life & Accident Insurance Co., 234 Ky. 788, 29 S. W. (2d) 557, 559. Whatever rights, if any, he might have acquired under policy No. G-3688 by reason of such conduct need not be determined because his administratrix is asserting no claim under that policy. We are therefore of the opinion that the court did not err in denying the appellant recovery under the provisions of policy No. G-1788.

Wherefore, the judgment as to the Prudential Insurance Company of America is affirmed and the judgment as to the Louisville & Nashville Railroad Company is reversed for proceedings consistent with this opinion.